LEONICIO BALDEZ v. THE STATE.

*No. 823.    Decided May 6th, 1896.*

1.  Murder in the Second Degree—Evidence Sufficient.

See, opinion for evidence which, though circumstantial, is held amply sufficient
to support a verdict and judgment for murder in the second degree.

2.  Same—Circumstantial Evidence—Charge.  '

See, opinion for a charge upon circumstantial evidence; Held: Correct and in
harmony with the rules established by the previous decisions of the court.

APPEAL from the District Court of Nueces.    Tried below before Hon.
J. C. RUSSELL.

Appeal from a conviction for murder in the second degree; penalty,
ten years' imprisonment in the penitentiary.

The indictment charged defendant with the murder of Antonia
Salinas de Baldez on the 9th day of September, 1895, by striking her in
and upon the head with an ax.

The opinion states the case.

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.—The charge
on circumstantial evidence does not appear as full and complete as re-
quired by approved forms on that subject.    Moreover, I do not think
the evidence sufficient to sustain this conviction.

HURT, PRESIDING JUDGE.—Appellant in this case was convicted of
murder in the second degree, and his punishment assessed at ten years
in the penitentiary, and from the judgment and sentence of the lower
court he prosecutes this appeal.    This case depends entirely upon cir-
cumstantial evidence.    The testimony, in substance, shows that the de-
fendant, his wife, and two children were sleeping on a mat or pallet
outside of a little cabin in the suburbs of Corpus Christi; that about 2
o'clock in the night the defendant roused Mr. Prior, a neighbor, who
lived some 250 or 300 yards distant.    Prior got up, and met the de-
fendant coming from the direction of a vacant house that was between
the house of the defendant and that of the witness, Prior.    The defend-
ant had a pistol in his hand.    Prior went to the defendant's house, and
there found his wife lying a few feet from the pallet where she had been
asleep, near a pool of . blood, with her head crushed.    She was still
breathing.    The defendant told the witness that he did not know who
had done it, but that there were two of them, and they were dressed in
women's clothes.    He said that he was asleep on the outside, with his
wife and children, and while sleeping he heard something fall in the
house, which awoke him.    When he heard this noise he got up, and
went around to the door of the middle room, on the south side of the
house, and when he got to the door he tried to pull it open, and that

one of the men on the inside of the room caught hold of the door, and kept him from opening it; that he then .took hold of the door, and jerked in open, and that as he entered the room he reached up, and grabbed a pistol which was on the shelf on the right-hand side of the door as he went in, and that when he grabbed the pistol the men attempted to run out of the door where the bed was, and that he fired one shot at them before they got out, and that as they went out he heard a lick, but could not see it, as the door way was darkened with the men as they passed through it; and that he heard his wife fall, and then saw the men jump over her, and then run around the east end of the house towards the west, and he fired a second shot at them; and that then the men jumped the fence, and circled back in the direction of the vacant house, and that he fired a third shot at them while he was outside of the fence.    He said that he was close to them every time he fired, and that he was positive he hit one of the men the first shot; that at the second shot he was about ten or twelve feet from the men; that when the men ran in the vacant house he threw a brick in the house at them.    He further stated that his wife must have got over to where she was lying when found by scuffling.    He further stated that his wife was struck with something that looked like an iron ball, and also that the two men were dressed all in black in women's clothes, and had shawls over their heads.    This same statement in substance was made by the defendant to several witnesses.    No iron ball was found on the premises, and no evidence of any scuffle or tracks of any person were found, though it was stated that the ground was hard, and tracks would not likely be made.    An axe was found close by, near a couple of barrels of water. The axe was wet when found.    Several witnesses testify to seeing spots on the axe that looked like blood, and also that they discovered on the axe, near the eye of it, where the handle goes in, a black hair. The hair was compared with a hair from the head of the woman, and the witnesses testify that it corresponded.    In the house a trunk was found to have been opened, and clothes scattered on the floor, and also some money was scattered on the floor of the room.    There is no evidence that anything was taken from the house.    The wound on the head of the deceased was examined by physicians, and they testified as to its shape; and that from its shape it could have been inflicted with an instrument or weapon of the shape and size of the axe in question; that it did not indicate that it was made with an iron ball. The next morning a portion of the skull was removed.    The defendant manifested some anxiety, and wanted to know if she would be able to talk.    He was informed that she would, and he said he was glad of it; that she would tell all about it.    There is nothing in the record to indicate any motive on the part of any person to commit the deed, and the evidence shows that, as far as the defendant was concerned, he and his wife had been on good terms previously.    On this state of the record but two questions are presented.    As to the charge of the court on circumstantial evidence.    The charge of the court on this subject was as

follows: "In this case the State relies for a conviction upon circumstantial evidence alone, and, in order to warrant a conviction upon such evidence, each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of his guilt, and producing in your minds a reasonable and moral certainty that the accused committed the offense." The contention is that this charge is not in accord with the rule laid down on this subject by this court. By reference to the cases involving a proper charge on circumstantial evidence, it will be seen that this charge embodies all of the essential elements of a proper charge on circumstantial evidence. It is not necessary here to discuss the question, but we refer to the cases of Jones v. State, 34 Tex. Crim. Rep., 490, and Smith v. State, 35 Tex. Crim. Rep., 618. The other question—as to the sufficiency of the evidence to sustain the verdict. We have already stated substantially the evidence in this case, and in our opinion that evidence was sufficient to exclude every other reasonable hypothesis consistent with the innocence of the defendant, and to fasten the guilt of the homicide upon him to a moral certainty, and beyond a reasonable doubt; and, the jury having so found, we will not disturb their verdict. The judgment and sentence of the lower court are affirmed.

*Affirmed.*