·Kinch Shelburne v. The State.

No. 11336.   Delivered March 28, 1928.
Rehearing denied December 19, 1928.

The opinion states the case.

*E. T. Simmang* of Giddings and *John Mathis* of Houston, *Bowers and Bowers* and *Tom Carter* of Caldwell, for appellant.

*Williams, Williams, McClellan & Lincoln* of Waco, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for five years.

The offense was committed on the 2nd day of July, 1923. The indictment was returned on the 11th day of June, 1926. The facts relied upon by the state were substantially as follows: The deceased, Otto Lange, was sitting on his porch on the night of the homicide. Four masked men drove to his house. Three men left the car, approached deceased and grabbed him. The wife of deceased endeavored to pull him away from the men. Deceased's young daughter also intervened. As the wife and daughter were pulling deceased

toward the door one of the men shot deceased in the back with a pistol. The assailants then hurriedly drove away. Although they carried flashlights, the assailants could not be identified on account of the fact that they wore masks. Mrs. Arnold, divorced wife of appellant's brother, testified that six or eight months after the homicide she heard her husband, Jess Shelburne, and appellant discussing the homicide. She was in the kitchen. Her husband and appellant were outside, near the kitchen. Appellant stated to Jess Shelburne that on the occasion of the homicide he and Ike Shelburne went to the house to get deceased, and that when deceased was about to get away Ike Shelburne shot him.

Appellant relied upon an alibi. Appellant's cross-examination of Mrs. Arnold, state's witness, disclosed that she separated from appellant's brother in June, 1924, and that in December, 1924, she first related the fact that appellant had detailed the circumstances of the homicide to her husband.

Appellant complains of the action of the court in refusing to grant his application for a change of venue. Upon the issue made by the state's controverting affidavit evidence was heard. As we understand the testimony, appellant's witnesses advanced points as follows: It was the fixed opinion throughout the county that Otto Lange had been murdered by masked men. The fact of the murder had been generally discussed and attributed to the Ku Klux Klan. Approximately twenty-five per cent of the male voters of the county belonged or had belonged to the Klan, while the larger proportion of the balance were opposed to such organization. The jury commissioners for several terms had been composed of men who were opposed to the Klan. The juries and grand juries had been composed largely of anti-Klansmen, the number of Klansmen serving in such capacities being negligible. The feeling between Klansmen and anti-Klansmen had been and was bitter. Political speeches had been made by prominent speakers in which the Klan was excoriated and held responsible for the murder of Lange. Newspapers of wide circulation in the county had reported the details of the killing. Appellant had been carried out of the county when arrested. Rangers had been kept at Somerville, where the killing occurred for several months thereafter. Appellant was a member of the Klan. In the opinion of the witnesses called by appellant a Klansman could not secure a fair and impartial trial, if tried before anti-Klansmen, and being a Klansman, appellant could not secure a fair and impartial trial in Burleson County. The majority of the 24 witnesses advancing the points mentioned were or had been members of the

Ku Klux Klan. In an effort to meet the issue the state used approximately twelve witnesses, the majority of whom were anti-Klansmen. These witnesses testified that appellant could secure a fair and impartial trial in Burleson County; that, while it was generally believed throughout the county that Otto Lange had been murdered by masked men, there was no prejudice against appellant; that the bitter feeling which had existed between the Klan and those opposed to the organization had died out and no longer prevailed; that the homicide did not provoke an unusual degree of excitement among the citizenship of the county. Several of the witnesses called by the state testified that rumor had attributed the killing to the Klan. Others testified that they had not heard the Klan connected with the transaction. The record discloses that appellant failed to exhaust his peremptory challenges. It is not shown how many jurors were challenged for cause. Appellant received the minimum penalty of five years. The issue of guilt was sharply contested, appellant relying upon an alibi.

Our analysis of the testimony reveals that it was the general opinion throughout Burleson County that Otto Lange had been foully murdered by masked men and that the Ku Klux Klan were responsible for the crime. It was further undisputed that a great deal of bitter feeling had prevailed between the members of the Klan generally and those opposed to the organization, which animosity had been evidenced by warm political campaigns in which the Klan generally was excoriated by its opponents and defended by its advocates. The fact that appellant was a member of the Klan was undenied, as was the further fact that those belonging to the Klan were greatly in the minority and generally constituted a negligible percentage of the grand and petit jurors. It was undisputed that there was no prejudice against appellant personally, it being his theory as testified to by his witnesses that the general prejudice against the Ku Klux Klan embraced him. The testimony on the question of the relations between the Klan and those opposed to it at the time of the trial was conflicting, Klansmen testifying that the feeling was bitter, and anti-Klansmen testifying that good feeling prevailed. Again on the question of the fairness of the trial to be obtained, the testimony was conflicting, Klansmen largely being of the opinion that a fair and impartial trial could not be accorded and anti-Klansmen largely being of the contrary opinion. Reduced to its last analysis the question for the trial court was: Was it probable that appellant, being a Klansman, could secure a fair and impartial trial in Burleson County? That such trial could be secured was the

conclusion of the trial judge after hearing conflicting evidence on the issue.

Where the application for a change of venue based upon the ground of prejudice is controverted the accused has the burden of proving such prejudice against him or his case as to render it improbable that he can secure a fair and impartial trial. McNeely v. State, 283 S. W. 522.

If conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. His judgment denying the application will not be disturbed on appeal unless it be made to appear that he abused his discretion. If, as stated in McNeely, supra, "the evidence is such that it leads to the conclusion that bias, prejudice or prejudgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application." See also Carlile v. State, 255 S. W. 901, and authorities cited.

We are unable to reach the conclusion that the record reflects an abuse of the discretion vested in the trial judge. The testimony being conflicting, the trial judge was in a better position to weigh the evidence and determine the issue than is this court. Moreover, that his conclusion was correct would seem to be supported by the fact that appellant was not driven to the extremity of exhausting his peremptory challenges and the further fact that the minimum penalty was imposed.

On the question of the prejudgment of appellant's case, the record discloses that it was undisputed that Otto Lange had been murdered. The question was: Who committed the offense? Appellant's defense was an alibi. The guilt or innocence of appellant was not shown to have been prejudged. The case of Langhorn v. State, 289 S. W. 57, presented a similar statement of facts. In sustaining the action of the trial judge in denying a change of venue Judge Lattimore said:

"We note that, in considering same in connection with the motion for a new trial, it was not inappropriate for the court below to give some weight to the testimony of the fact that appellant shot and killed deceased because of her resistance to attacks by him upon herself and her sister, and that the only contest made was whether appellant was of sound mind at the time of the killing, and that upon this issue practically no discussion or prejudgment was shown to have existed or been had in said county; we also think the court

might take into consideration the further fact that, after the motion for change of venue was overruled, a jury was obtained out of the first 57 veniremen summoned, appellant and the state each using only 7 of their 15 peremptory challenges."

From what we have said it follows that we find no error in the action of the trial judge in refusing to change the venue.

Bills of exception Numbers 2 to 4 inclusive deal with the action of the court in excusing certain jurors upon challenge by the state, it being contended by appellant that said jurors were qualified. The bills of exception do not attempt to show that any objectionable juror was forced on appellant. Nor do said bills show that the court's action resulted in any injury to appellant. The qualifications appended to the bills show that appellant did not exhaust his peremptory challenges and had several left when the panel was completed. "The mere fact that a qualified juror may be improperly excluded by the court is not within itself sufficient grounds for the reversal of the case. The bill of exceptions must go further and show that the appellant suffered some injury by reason of the court's incorrect ruling." Hash v. State, 286 S. W. 1102. It follows that reversible error is not manifested by said bills.

Complaint is made in bill of exception Number 5 of the refusal of the court to permit appellant to have the jury retired after their verdict had been returned in order that he might call each juror into court separately and apart from the remainder of the panel and examine him individually concerning certain supposed misconduct. In qualifying the bill of exception the court stated that appellant was not refused the right to have the jury polled but that said jury was polled in open court by having the name of each juror called separately and asked if the verdict returned was his verdict. It was further shown by the qualification that all of the jurors answered in the affirmative and that the verdict was received by the court. The procedure adopted seems to have been in accordance with Article 691 C. C. P. and appellant's bill of exception shows no error.

By bill of exception Number 7 appellant complains of the action of the court in permitting the state to ask the widow of Otto Lange if she was afraid of appellant after the death of her husband. The witness answered in the affirmative. Appellant's objection was that it tended to impress the jury with the fact that he was a dangerous man and one to be feared. We are unable to determine from the bill of exception whether such testimony was relevant and material to any issue in the case as no facts are stated in the bill which would

enable this court to conclude that the ruling of the trial court was incorrect. No facts are shown which would negative the materiality of the testimony. The legal presumption is that the ruling of the trial court was correct unless the bill of exception shows otherwise. The bill under consideration failing to comply with the rule that a bill of exception should be made so full and certain in its statements as that, in and of itself, it will disclose all that is necessary to manifest the supposed error, we must hold that reversible error is not shown. Branch's Annotated Penal Code, Section 207; Buchanan v. State, 298 S. W. 569.

Appellant placed in issue his general reputation for being a peaceable and law-abiding citizen. It appears from bill of exception Number 12 that after one of his witnesses had testified that appellant's reputation in the respect mentioned was good he was asked by the state if he did not tell certain parties that appellant and his brothers were outlaws, and if it wasn't true that he had heard it talked on the streets that the Ku Klux Klan had a whipping squad and that appellant was a member of such squad. Appellant objected to such questions on the ground that they were irrelevant and immaterial, only the opinion and conclusion of the witness and hearsay. The witness denied that he had made the statement concerning appellant and his brothers and stated that he didn't know that he had ever heard that appellant was a member of the whipping squad of the Ku Klux Klan. We find no error in the action of the court in permitting the state to elicit such testimony. It was the theory of the state that deceased was killed by members of the Ku Klux Klan and that appellant was present and participated in the killing. It is proper for the purpose of testing the credibility of a witness to the good character of the accused and to enable the jury to weigh his evidence to ask him on cross-examination whether he had heard rumors of particular and specific charges of acts of the accused inconsistent with the character he was called to prove. Townsley v. State, 281 S. W. 1054, and authorities cited.

Appellant lodged numerous exceptions to the court's charge. We have carefully examined the charge of the court in connection with said exceptions and find no error warranting a reversal.

Other questions are presented which are not discussed. A careful examination, however, of each contention made by appellant convinces us that reversible error is not present.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, Judge.—In his motion for rehearing appellant again urges many of the points originally relied on for a reversal. There is brought forward in a bill of exceptions which complains of the denial of a change of venue, the evidence heard upon that issue. This bill covers 229 pages of close, typewritten testimony, all of which has again been carefully examined in view of appellant's insistence. The present writer confesses inability to make a more careful or correct analysis of this mass of evidence than is contained in our original opinion. The view there expressed remains unchanged that the learned trial judge, in determining the issue on conflicting evidence, can not be held to have abused his discretion.

Appellant challenges the disposition made of his bill of exceptions No. 7. It consists only of a recital that Mrs. Lange, over objection, was permitted to testify that after her husband was killed, she was afraid of appellant. The remainder of. the bill consists solely of grounds of objection urged. We are not referred to the statement of facts by any recital in the bill, in the absence of which we are not called upon to go to the statement of facts in aid of the bill. Such has been our uniform holding. It is conceivable that the case may have developed in such way that the evidence complained of became properly admissible. There being no recital in the bill from which we learn that the evidence was not pertinent, we must assume that the court ruled correctly. If we go to the statement of facts error in the court's ruling is not apparent.

We care to notice only one other point stressed by appellant in his motion and which was not discussed in the original opinion. By written objections to the charge appellant undertook to present legal issues upon whether the issue of manslaughter was raised by the evidence, and whether appellant was responsible for the act of Ike Shelburne, who was claimed by the State to have actually fired the shot which killed Lange, appellant's contention being that only a misdemeanor, to-wit: the whipping of Lange was contemplated. No such issue was raised by any evidence given by appellant or any of his witnesses. He denied any participation in the transaction. His whole defense was an alibi. It is appellant's claim that the issue was raised by the State through the testimony of the witness Mrs.

Arnold, which in substance was that several months after the killing she heard appellant tell her husband that appellant and the other participants went to Lange's house to take him out and whip him, and when he was about to get away from them that Ike Shelburne shot him. The undisputed facts seem to settle the question presented against appellant. Three parties masked and at night went to deceased's house; as they approached him one of the three was carrying a pistol, the other two had flash lights. The one having the pistol was using and displaying it, and with it committed an assault upon deceased's wife who was attempting to protect him, and finally committed a deadly assault upon deceased with said pistol. Such assault, regardless of its result, having been with a pistol unlawfully carried at the time, was a felony. Art. 1151 P. C. reads as follows:

"If any person shall wilfully commit an assault or an assault and battery upon another with a pistol, . . . while the same is being carried unlawfully by the person committing said assault, he shall be deemed guilty of an assault with a prohibited weapon and upon conviction shall be punished by a fine not to exceed two hundred dollars or by imprisonment in jail not to exceed two years, or by confinement in the penitentiary for not more than five years."

So it clearly appears that the parties who approached deceased on the night in question were acting together and all three were knowingly participating in the commission of a felony with a pistol unlawfully carried. These facts are not disputed by any witness. Death having resulted while the parties were engaged in the commission of a felony by the use of a "prohibited weapon," the parties would be guilty of murder. There is no evidence raising the issue that the shooting of Lange was a mistake or an accident.

Aside from the principle just considered, it may well be argued that what happened was within the reasonable scope of the conspiracy. That general subject is discussed at length in the case of Serrato v. State, 74 Texas Crim. Rep. 413, 171 S. W. 1133, and Mitchell v. State, 36 Texas Crim. Rep. 278. In the latter case approval seems to have been given to the holding in Williams v. State, 81 Ala. 1; 1 So. 179. We quote from that case:

"The question in this case, then, would seem to be whether, if five or six men combine together to invade a man's household, and they go there armed with deadly weapons for the purpose of attacking and beating him, and, in furtherance of this common design, all of the confederates being present or near at hand, one of them gets into a difficulty with their common adversary, and kills him, all may

be guilty of murder, although they did not all entertain a purpose to kill. The question, we think, must be answered in the affirmative, in the light of both principle and authority. Every man has the right to defend his house against every unlawful invasion, and to defend his person, when within it, against every and all violence, without the necessity of retreat. The experience of mankind shows that very few men will fail to respond to instinct by exercising this right to the extent even of killing an assailant if necessary. When a mob, conspiring together unlawfully, go to a man's house to do any serious violence to his person, especially in the night-time, as here, they can expect nothing else than to meet with armed opposition, and the inference is not unreasonable that they intend nothing less than to oppose force to force, in the furtherance of their design. The natural and probable consequence of this is homicide,—either of one or more of the assailants, or of the party thus assailed,—and such homicide, when committed by any one of the conspirators, can be nothing less than murder in all who combine to commit the unlawful act of violence, especially if they be near at hand, inciting, procuring or encouraging the furtherance of the act of assault and battery."

In the present case the conclusion may well be drawn from the undisputed facts that the parties went to Lange's house with the purpose to take him out and whip him at all hazards, and to kill if necessary to prevent the thwarting of their plans. There is no evidence that the killing by one of the three was upon an independent design unknown to the others and not in contemplation of all of them.

The motion for rehearing is overruled.

*Overruled.*