## John Rippy v. The State.

No. 12901.   Delivered October 30, 1929.
Rehearing denied February 26, 1930.

The opinion states the case.

*Robt. H. Hopkins* and *Owsley & Owsley,* all of Denton, and *Alvin M. Owsley* of Dallas, for appellant.

*Earl Street,* County Attorney of Denton, *Elbert Hooper* of Fort Worth, *E. M. Overshiner* of Abilene and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, twenty-five years in the penitentiary.

Facts necessary to an understanding of the law point discussed hereafter are briefly as follows:

Appellant owned a filling station on a highway in Cooke County. He leased it to deceased, John Hornsby. The killing occurred on July 25th and Hornsby's lease expired August 1st thereafter. Appellant's motive for the killing, as claimed by the State, was to get possession of the filling station. Hornsby was found at his filling station shortly after six o'clock P. M. with a shotgun wound in his body. Appellant was seen at the filling station with a twelve gauge single barrel shotgun a short time before this. Two shots were heard by small boys on bicycles which came from the direction of the filling station. Tracks led from the filling station to appellant's house, where he was arrested less than an hour after the killing. A shotgun shell was found by the body of deceased which fitted a twelve gauge gun. However, shells found at his house did not correspond in make to the one found at the body. There was testimony pro and con as to the feeling between the two parties. Some other incriminating facts not necessary to mention appear in the record. Appellant denied the killing, his theory apparently being that deceased was killed by highjackers. Deceased was shown to have had a roll of bills a short time before the killing. These were not found on his body nor about his place of business after his death so far as this record shows. The filling station was on a public highway along which a great many people travelled.

The case was called for trial on April 9th and appellant filed a motion for continuance on account of the absence of Howard Colburn and Will Drake. We find it necessary to discuss such application only as it related to the witness Drake. His application was overruled and he thereafter filed what he denominates a "supplemental application." This was likewise overruled and the action of the Court with respect to these two applications was made the subject of an assignment of error on motion for new trial, upon which evidence was heard. The record is in a somewhat unsatisfactory condition in some respects, but we believe the following is fairly inferable from the record: That witness Drake had been subpœnæd and was in attendance upon the court the day it convened. He had some temperature and informed his attorneys that he had been exposed to smallpox, which was reported to the court, who had

him examined by the county health officer. This officer reported that Drake had some temperature but that he could not yet tell whether he had smallpox. Witness was either excused by the Court to go back to his home at Ft. Worth or else he went with the acquiescence of the Court, the precise status of which is in some doubt. There he reported to the health officer and was immediately quarantined. Such officer sent to Gainesville a statement that witness was under quarantine and that release could not be given in less than seven days. This was on April 9th. A supplemental application for continuance or postponement was then filed, to which this certificate was attached together with an affidavit from the witness as to what he would swear, which was in substance as follows: That he was at Hornsby's filling station, saw two boys on the bicycles who testified for the State and which was apparently at a time, from the circumstances testified to by the witness, a few minutes before the killing; that there were present at said filling station a white man and two Mexicans; that the white man tried to trade deceased whiskey for gasoline; that the deceased declined to make the trade and told the man that he had gasoline to sell and not to trade; that they seemed to be in a heated argument about the matter. One of the men tried to sell affiant a bottle of whiskey and he told him he did not drink and the man said "This may be one time when you will drink," and fearing trouble they drove off and that the man with the whiskey shouted after them, "G— d— cowards."

The State's case was one of circumstantial evidence and the appellant was offering this testimony as a circumstance to show that these parties highjacked and killed the deceased and took the roll of missing bills. The State contends that this was not material and apparently contends that it was not admissible. We think the testimony was material and admissible. Dubose v. State, 10 Tex. Crim. App. 230; Kirby v. State, 49 Tex. Crim. Rep. 517; Wheeler v. State, 56 Tex. Crim. Rep. 549; Ward v. State, 158 S. W. 1126. There seems to be no question about diligence as the showing is made that witness had been subpœnæd and was in attendance upon the Court. It subsequently developed that the witness did not have smallpox and the Court was of the opinion that the appellant should have issued an attachment and brought this witness from Ft. Worth. Upon a hearing of the motion for new trial an affidavit was produced from the health officer at Ft. Worth that he would have permitted Drake to attend court upon a statement from the officers of

said court that they would see that Drake did not come into contact with any person susceptible to the disease of smallpox. Neither the appellant nor his attorneys are shown to have had any knowledge during the trial of this affidavit. If the State regarded this as sufficient authority to bring the witness out of quarantine, an attachment should have been issued at the State's request during the trial for the witness. Taking the showing made by the original and supplemental applications for continuance, it clearly appears that the testimony was material, that due diligence had been used to secure the presence of the witness and that it was of such character that it might have probably produced a different result at the trial, if the witness had been present and testified. The rule in such cases has been too ofttimes stated to again require repetition. See White v. State, 236 S. W. 745; Battle v. State, 290 S. W. 862; Branch's P. C., Sec. 338.

Without tediously reciting all the incriminating facts, they are of such character as would seem to demand full opportunity on the part of appellant to produce every circumstance and fact within his power to rebut them. This could have been accomplished by a postponement of the case. Because of this error, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state has filed a motion for rehearing insisting that the judgment should not have been reversed because of the absence of the witness Drake. There can be no question as to the materiality of his evidence. It is not for us nor the trial judge to determine its probable truth. This is precluded by the affidavit of the witness attached to the motion for new trial. White v. State, 90 Tex. Cr. R. 584, 236 S. W. 745 and cases therein cited; also Mangrum v. State, 105 Tex. Cr. R. 644, 290 S. W. 166; Tubb v. State, 5 S. W. (2d) 150; Kellar v. State, 11 S. W. (2d) 512. Neither do we think under the circumstances of the present case we can assume responsibility of holding that if Drake had been present and testified there is no reasonable probability of any different result of the trial. We must judge that from the view point of

the jury. If they should accept Drake's evidence as true—and in view of his affidavit attached to the motion for new trial they are the ones to determine it—the state's theory of this killing is overturned.

The witness Drake in response to process appeared as a witness when the case was called for trial on April 8th. He reported to appellant's attorneys that he had been exposed to smallpox; this information was conveyed to the trial judge who suggested that the county health officer examine the witness; he was found to have some temperature but no pronounced symptoms of smallpox as the time for this development was too soon after the exposure. The result of the examination was made known to the judge; he did not see the witness and did not excuse him in person but told one of appellant's attorneys that "as long as there was any thought or chance of his having it (smallpox) that I did not want to jeopardize the health of the jurors or any other officers, . . . and that it would be best to let him go home under the circumstances." Upon being told this the witness went to his home in Fort Worth. It was evidently in the mind of the trial judge that before the witness would be needed it would probably develop whether or not he had smallpox. Appellant's application for continuance for this witness was overruled on April 8th. Upon reaching Fort Worth the witness reported to the health officer there his exposure to smallpox and he was vaccinated and quarantined as a "smallpox contact." On April 9th a letter was directed to one of appellant's attorneys by the health officer of Fort Worth advising of the vaccination and quarantine of the witness and informing the attorney that he would not be released from quarantine until April 15th. Immediately upon receipt of this letter—on April 10th—a renewed application for continuance was presented, attached to which was the letter from the health officer in Fort Worth and the affidavit of the witness as to what his testimony would be; this application was likewise overruled. If the court did not fully appreciate the importance of the testimony of the witness beforehand, it evidently became apparent as the trial progressed. During the time appellant was putting on his evidence the judge told one of appellant's attorneys in private conversation, and while the attorney was reading or examining some notes, that he would give the attorney an attachment for the witness Drake if the attorney wanted it, and understood the attorney to reply that "It won't do any good." The attorney in question gave testimony on the hearing of the motion for a new trial that he did not hear the judge make such

offer, or did not understand what was said. It does not appear that counsel for appellant had any information touching the probability of getting the witness further than the health officer's statement heretofore referred to that witness would not be released from quarantine until April 15th. The case went to the jury on April 12th. Upon the hearing of the motion for new trial on April 26th the state introduced an affidavit from the health officer which was made on April 13th to the effect that he would have permitted the witness to attend court upon a statement "from the officials of said court" that they would see that the witness "did not come in contact with any person susceptible to smallpox." It is not shown that appellant's attorneys had any knowledge of this attitude of the health officer until said affidavit was introduced by the state. If the state's officers knew that the presence of the witness could be obtained during the trial upon giving the assurance suggested by the health officer it occurs to us that they should have taken steps to have him present as they only could furnish such assurance. Considering the materiality of the absent testimony, the diligence used to have the witness present, and the effort to secure a postponement of the case until that could be accomplished, we do not feel authorized to hold that the presence of the witness was waived. The trial judge is to be commended for not encouraging a multiplicity of continuances, but circumstances sometimes arise where in the administration of justice delay cannot be avoided; after all, juries must decide questions of fact upon material evidence, and when deprived of an opportunity to hear it injustice may result.

The motion for rehearing is overruled.

*Overruled.*