Ed Davis v. The State.

No. 13030. Delivered October 30, 1929.

The opinion states the case.

*Jno. F. Weeks* of Odessa and *J. B. Cotten* of Crane, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, robbery with firearms; penalty, five years in the penitentiary.

At about one or two o'clock in the morning of April 4, 1929, Joe Grimes, an employee of the Betty Brown Bakery in the town of Wink, was held up at the point of a pistol and a safe belonging to said bakery taken and hauled away. Officer R. E. Williams was called and testified that he trailed an automobile from the scene of the crime to a point in the brush near the city and there found the safe rifled of its contents. A few dollars in money was missing and one check in the sum of $17.50. Williams further testified that the automobile tracks led back to appellant's residence. Arriving there, after trailing this automobile, appellant and his wife were both arrested and both placed in jail. Later in the day, while appellant and his wife were in jail, witness Williams in company with another returned to the house, opened it and going in, found in a trunk a check for $17.50, which was thereafter identified as the property of the owner of the Betty Brown Bakery. Practically all of the incriminating testimony was given by the witness Williams.

We are met at the outset with the insistance of appellant that this Court grant him relief upon the following state of facts:

Finger prints were found on the safe in question, were photographed and forwarded to the penitentiary authorities of Oklahoma under the belief that they would show to be those of appellant, alleged to be a former inmate of the Oklahoma penitentiary. Instead they proved to be the finger prints of the witness R. E. Williams, who was arrested and returned to the penitentiary from which he had escaped in 1915 and who had been sentenced to a term of twelve years for robbery and who is now serving his said term in the penitentiary. This matter apparently was discovered too late for its presentation to the trial court. This is a reviewing court only and under the law can take no cognizance of this matter. The showing made has no place in the record and all data pertaining thereto is stricken for that reason.

The point is properly presented that the Court erred in admitting in evidence the check above referred to because same was obtained as a result of an illegal search made without a search warrant and

in violation of appellant's constitutional rights. It is made to appear in a bill presenting this matter that officer Williams and another entered the home of appellant and his wife without their consent and without a search warrant some hours after they had been arrested and placed in jail and that they were in jail at the time of the search and that the check in question was found in their home in a trunk among some private papers. Some of the statutes and constitutional provisions affecting the question at issue are here quoted:

The Fourth Amendment to the United States Constitution provides:

"The, right of the people to be secure in their persons, homes, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the person or thing to be seized."

Art. 1, sec. 9, Constitution of Texas, provides:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation."

"A search warrant may be issued:

"1. To discover property acquired by theft. * * *" Art. 305, C. C. P. (1925).

"A warrant to search for and seize property alleged to have been stolen and concealed at a particular place may be issued by a magistrate, whenever written sworn complaint is made to such magistrate, setting forth:

"1. The name of the person accused of having stolen * * * the property.

"2. The kind and value of the property. * * *

"3. The place where it is alleged to be concealed. * * *" Art. 310, C. C. P. (1925).

"It shall be unlawful for any person or peace officer, or State ranger, to search the private residence, actual place of habitation, place of business, person or personal possessions of any person, without having first obtained a search warrant as required by law." Art. 4a, C. C. P. (1925).

These constitutional and statutory provisions are sufficient to show that the search in question was in plain violation of the

mandates of the Constitution and that there was at the time available to the officer the right of search under the statute if he had seen fit to pursue it. Instead he arrested both the appellant and his wife without a warrant and apparently as to the wife without any excuse or justification and then proceeded to go into their home in their absence and without their consent and to rifle their private papers. That his action was a flagrant violation of the rights of the accused long regarded as fundamental and which was specifically guaranteed in the early history of Anglo-Saxon jurisprudence is made obvious from an examination of the numerous cases on the subject. We can do no better than to here quote the vigorous language found in some of the cases discussing this question.

In Weeks v. United States, 58 Law. Ed. 652, the accused had been arrested for the unlawful use of the mails. While under arrest and in his absence without a search warrant officers entered his home and there searched and found certain papers, stock certificates, etc. These were introduced in evidence against the accused and disposing of this question, the Supreme Court of the United States uses the following language:

"If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information, and describing with reasonable particularity the thing for which the search was to be made."

In the case of Agnello v. United States, 70 Law. Ed. 145, it appears that officers observed Agnello and others in the act of violating a United States law and the house was entered where such violation was occurring and all parties were arrested and some of them searched. They then proceeded to Agnello's house some distance away and without his consent and in his absence without

a search warrant searched his bedroom and there found certain incriminating evidence. The evidence was held inadmissible. The Court uses the following language:

"The search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws. * * * Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, Federal or state, for the search of a private dwelling house without a warrant. * * * Belief, however well founded, that an article sought is concealed in a dwelling house, furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause."

We take the following language from the case of Ex parte Gould, 60 Tex. Crim. Rep. 452:

"The Constitution holds too sacred the privacy of home to permit this. As was said by Lord Chatham: 'The poorest man in his cottage may bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King may not enter, and all his forces dare not cross the threshold of the ruined tenement.' We can not believe in the doctrine that Constitutions may be enlarged, amended or repealed by interpretation, and whenever the provisions of the Constitution are violated and officials, either ministerial, executive or legislative, attempt the enforcement of rules and regulations violative of its provisions, the courts, anchored close to the Constitution, have never hesitated to call them back to the limits of that instrument."

The Kentucky Court of Appeals in holding inadmissible testimony of a character similar to that under discussion makes use of the following language:

"But, notwithstanding this general knowledge of the prohibition against unlawful search, it is not an uncommon thing in this state for officers of the law, urged in some cases by popular clamor, in others by the advice of persons in a position to exert influence, and in yet others by an exaggerated notion of their power and the pride of exploiting it, to disregard the law upon the assumption that the end sought to be accomplished will justify the means, and therefore no attention need be given to constitutional authority when public approval will commend the unlawful conduct. And as there appears to be a growing public sentiment against the ob-

servance of, or obedience to, any constitutional restraint that obstructs or stands in the way of the desires of those who seek to accomplish their purposes, regardless of Constitution or laws, we will be at some pains to set down in this opinion the constitutional provisions protecting the citizen against unlawful search and seizure." Youman v. Com., 13 A. L. R. 1306.

The trial court admitted the testimony apparently under the belief that Art. 325, C. C. P. (1925), authorized it. This article reads as follows:·

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen, and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose. To justify such seizure, there must, however, be reasonable ground to suppose the property to be stolen, and the seizure must be openly made and the proceedings had without delay."

This article has been given application in the recent cases of Hepworth v. State, 12 S. W. (2nd) 1018, and Childress v. State, 107 Tex. Crim. Rep. 10. The distinction between the search of a private dwelling and the person of a suspected thief contemporaneously with a legal arrest who is caught with the stolen goods is obvious from the authorities. See Agnello v. United States, supra; Chapin v. State, 296 S. W. 1095; Battle v. State, 290 S. W. 762; Houston v. State, 16 S. W. (2nd) 119. The right of arrest carries with it the right of a contemporaneous search of the person and under some circumstances of the place where the arrest occurs. But these are not the instant facts. Here the arrest had occurred several hours before. The home of accused was entered subsequently without the semblance of legal authority. This officer, or any other under like circumstances, became by such unlawful act a law violator himself, which neither the habiliments of office nor the exigencies of the occasion palliate or excuse.

We may further add that the provisions of Art. 325, C. C. P., are general, while those of the articles going before it already referred to are specific and deal with the very subject matter under discussion. To give said Art. 325 the interpretation claimed would have the effect of making a general statute control a specific one. Besides there would seem to be no further use for the quoted portion of our Constitution if such an interpretation is to prevail.

The evidence in question was improperly received and demands of us a reversal and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.