**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Celio CASTRO and Ralph Alfonso,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Albert GREENE, Jr.,
Defendant-Appellant.**

**Nos. 78–5510, 78–5660
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 6, 1979.

Rehearing Denied July 18, 1979.

Alvin E. Entin, Ronald A. Dion, North Miami Beach, Fla., for Castro and Alfonso.

John F. Daniel, Panama City, Fla., for Alfonso.

Nickolas P. Geeker, U. S. Atty., Pensacola, Fla., Donald S. Modesitt, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before CLARK, GEE, and HILL, Circuit Judges.

GEE, Circuit Judge:

Appellants Celio Castro, Ralph Alfonso and Albert Greene, Jr. were jointly indicted for conspiracy to possess marijuana with intent to distribute and for possession thereof with intent to distribute, violations of 21 U.S.C. §§ 841(a)(1) and 846. Greene failed to appear for trial at the appointed hour and was later tried separately; all were convicted and now appeal. All urge that the customs' search of the shrimper on which they were arrested was unconstitutional. Castro and Alfonso additionally complain of the admission of an out-of-court statement by Greene, about the admission of a list found in Castro's wallet after arrest, and about the jury charge concerning the voluntariness of Castro's confession. Finding no merit in their various arguments, we affirm.

Around 8:00 a. m. on December 29, 1977, officers of the U. S. Customs Service stationed at Panama City, Florida, received word from a Florida Marine Patrol officer that an unknown shrimp boat captain had reported observing a shrimp boat named TINILA five to six miles from St. George Island, an offshore island running roughly parallel to the Florida panhandle near Apalachicola. The area is a known scene of contraband smuggling. The captain had seen high speed boats going to and from the TINILA, which he described as a 65 to 70 foot shrimp boat, white with blue trim, with the home port of "Key West, Florida,"

Manuel W. James, Key West, Fla., for Castro.

painted on the stern. Though a customs officer testified that he understood the report as meaning that the vessel was south of the island and therefore in international waters in the Gulf of Mexico, it is apparently admitted that the vessel might have been to either side of, or even north of, the island and thus possibly in intracoastal or other national waters when it was observed by the shrimper.

Around 1:30 p. m. that day, a vessel named TANILA and matching the description of the vessel reported earlier was observed passing under a bridge on the Intracoastal Waterway near Choctawhatchee Bay. It was heading eastward toward the open waters about 20 miles distant. Customs agents checked with the Coast Guard documentation officer in Washington, D. C. and were informed that no vessel of the name TANILA was documented. Three customs officers intercepted the vessel as it reached the West Bay Bridge and boarded to determine the boat's nationality, to check its documentation, and to determine whether the boat had come from foreign waters. One officer went immediately to the cabin to inspect the documents, but none were produced. Another officer simultaneously observed marijuana debris scattered loosely about the open deck. After a field test verified the nature of the marijuana, the appellants were arrested and the vessel was seized. The officers continued to search the boat as it was escorted to port. In the crew's cabin they found a paper plate holding marijuana residue and a marijuana cigarette. A grocery bag full of marijuana was found in Greene's bed. Greene admitted that it was his "stash." A box of the substance was also found in the captain's quarters. Castro stated that it was his, that Santa Claus had given it to him.

■ Since there had been no known, recent "nexus" to the border, appellants argue that the customs agents exceeded their constitutional authority in boarding and searching their boat, which had been observed by the officers only in inland waters. This theory fails. A recent nexus to the border is not a prerequisite for an investigatory stop based on reasonable suspicion. *United States v. Whitmire,* 595 F.2d 1303 (5th Cir. 1979).

At the time of the boarding, the customs agents possessed sufficient articulable facts to support an inference that the TANILA was involved in smuggling contraband. Boarding to determine the vessel's identity and documentation was a reasonable response to that suspicion. Once aboard, the agents saw marijuana debris in "plain view" upon the deck, providing probable cause for an intensive search of the vessel. *United States v. Freeman,* 579 F.2d 942, 947–48 (5th Cir. 1978). On this record we decline to reach the question whether customs' statutory authority under 19 U.S.C. § 1581(a) constitutionally allows the boarding of a vessel, sighted initially in inland waters, even absent reasonable suspicion. *See United States v. Whitaker,* 592 F.2d 826 (5th Cir. 1979); *United States v. Freeman,* supra, in which that question was decided as to vessels sighted in "customs waters" and boarded there or subsequently in intracoastal waterways.

■ The second point of error involves the use at Alfonso and Castro's trial of Greene's post-arrest statements. While cross-examining one of the arresting customs officers, the attorney for appellant Alfonso sought to shift blame to the absent Greene by asking whether Greene was the person aboard who had been smoking marijuana. The officer replied that Greene had admitted he had been smoking from his "stash." Alfonso's counsel continued into this area and even asked the officer whether the "verbiage 'stash' " indicated that it was Greene's property. On redirect examination the prosecutor elicited further information about Greene's statement. Greene had told the officer that the marijuana was not solely his, that he had found it on the boat, that he did not know who owned it, and that he had been smoking a bit out of a particular portion that was his stash.

Despite having opened up this area in an effort to possibly mislead the jury into thinking that the absent Greene owned the marijuana aboard, Alfonso, joined by Castro, now argues that his rights of confrontation under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), were violated by the further testimony regarding Greene's statement. We disagree. *Bruton* rights are violated only by admission of extrajudicial statements *implicating* the complaining defendants. *United States v. Roach,* 590 F.2d 181, 185 (5th Cir. 1979). Where, as here, a statement does not *directly* allude to the defendants, *United States v. Hicks,* 524 F.2d 1001, 1003 (5th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353; 426 U.S. 953, 96 S.Ct. 1729, 48 L.Ed.2d 197, *rehearing denied,* 426 U.S. 930, 96 S.Ct. 2640, 49 L.Ed.2d 382 (1976); *United States v. Grillo,* 527 F.2d 1344 (5th Cir. 1976), no rights are abridged. Even were the Greene statements more incriminating as regards Alfonso, we would be loath to reverse on his account since it was his deliberate trial strategy to open up the area.

■ In their next point of error, Alfonso and Castro argue that the exclusionary rule required suppression of a folded piece of paper found in Castro's wallet during a search at the jail. The paper, written in Spanish, appeared to be a list of locations to which marijuana was to be delivered. They argue that this was not a search incident to arrest since it was delayed. They claim in addition that inventory search concepts cannot justify the warrantless reading of a folded paper in a wallet, since the normal practice at that jail was to inventory a wallet as a whole after money had been removed therefrom and counted. We need not reach the latter issue because we find that the search of Castro's person and his immediate personal effects for evidence was a valid search incident to arrest. It is clear from *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), that, as contrasted with a search of the premises in which an arrestee is apprehended, a warrantless search of the *person* incident to a custodial arrest may include a full inspection to discover evidence of crime or fruits thereof, in addition to the disarming of a suspect. And *United States v. Edwards,* 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974), established that searches and seizures that could be made "on the spot at the time of arrest" may legally be conducted later when the accused arrives at the place of detention. *Brett v. United States,* 412 F.2d 401 (5th Cir. 1969), on which appellants rely, may not survive *Edwards.* In any case, however, the *Brett* search that occurred three days after arrest is distinguishable from searches following closely upon incarceration. *See, e. g., United States v. Gonzalez-Perez,* 426 F.2d 1283 (5th Cir. 1970). Under these principles the folded paper was properly seized and admitted into evidence.

■ As a final point of appeal, Castro urges that the trial court erred in refusing to give a requested jury instruction regarding the voluntariness of his confession. He had requested and received an identical instruction immediately before the confession had been introduced on the theory that the instruction was very important, and he didn't want it "buried in all the general instructions." Having requested and received the courtesy of an early instruction, he cannot now successfully claim that the court abused its discretion in refusing to give a duplicative instruction amid the general jury charge.

AFFIRMED.