**UNITED STATES of America, Appellee,**

**v.**

**Donald J. DIEN, Sanford S. Gendler, and Michael E. Dakota, Defendants-Appellants.**

**Nos. 1080–2, Dockets 79–1036, 79–1072 and 79–1075.**

United States Court of Appeals, Second Circuit.

Argued June 5, 1979.

Decided Oct. 26, 1979.

Petition for Rehearing Filed Dec. 12, 1979.

Decided Jan. 31, 1980.

Before OAKES and MESKILL, Circuit Judges and STEWART, District Judge.*

STEWART, District Judge:

In regard to the Government's argument that a "security search of the photo studio" was permissible, the panel opinion made it quite clear that "where the agents have reason to believe other suspects were in the apartment," exigent circumstances exist. *U. S. v. Dien*, 609 F.2d 1038 at 1047 (2nd Cir.). Here, however, they did not, as indicated by DiGravio's not searching the room immediately upon entering. *Id.* We think that this does not change the law of *United States v. Christophe*, 470 F.2d 865, 869 (2d Cir. 1972), *cert. denied*, 411 U.S. 964, 93 S.Ct. 2140, 36 L.Ed.2d 684 (1973) and similar cases relative to cursory searches although the statement in *Christophe* made no mention of exigent circumstances. In any event the law very plainly requires exigent circumstances. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), so far as we are aware, has never been overruled. *See also United States v. Mapp*, 476 F.2d 67 (2d Cir. 1973); *United States v. Mangeri*, 451 F.Supp. 73, 76–78 (S.D.N.Y.1978); *United States v. Bravo*, 403 F.Supp. 297, 302–03 (S.D.N.Y. 1975), *aff'd in part and rev'd in part sub nom., United States v. Armando-Sarmiento*, 545 F.2d 785 (2d Cir. 1976).

* Of the Southern District of New York, sitting by designation.

In respect to the seized boxes all that we held was that a warrant to open them was required. The cardboard boxes were closed and sealed with tape. The van was immobilized and Agent DiGravio had the keys. The van was only a short distance from the courthouse. The sole question was whether a warrant should have been obtained to open the cartons. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) held that the answer to this was affirmative, citing *Coolidge v. New Hampshire,* 403 U.S. 443, 481, 91 S.Ct. 2022, 2045, 29 L.Ed.2d 564 (1971) and, *inter alia, United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The various arguments of the Government here were dealt with in our opinion, 1044–46, and in those cases.

The only really arguable point is whether *Arkansas v. Sanders* made new law. We think it did not, as the Court itself defined the question as whether "the warrantless search of respondent's suitcase falls on the *Chadwick* or the *Chambers/Carroll* side of the Fourth Amendment." 442 U.S. at 757, 99 S.Ct. at 2589. Being guided by "established principles," *id.,* the Court there applied *Chadwick* retroactively to an April 23, 1976 Little Rock, Arkansas police search. Presumably *Peltier* prospectivity did not come into play because of *Coolidge.* A fortiori a search as is involved here after *Chadwick* must require a warrant.

To be sure, *United States v. Ochs,* 595 F.2d 1247 (2d Cir. 1979), followed *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and said that *Chadwick* "did not affect the viability of *Chambers* on facts such as these." *Id.* at 1254; *but see, e. g., United States v. Stevie,* 582 F.2d 1175, 1179, 61 L.Ed.2d 876 (8th Cir. 1978) (en banc) *cert. denied,* 443 U.S. 911, 99 S.Ct. 3102 (1979), cited in *Ochs,* 595 F.2d at 1254 n. 5: *Ochs* sought to distinguish *Chadwick* by arguing first that the briefcases in *Ochs* were not locked (and presumably therefore their owner had a lesser expectation of privacy). *Id.* at 1255. But here as in *Chadwick* the cartons were taped. The second distinction is that the owner of the car in which the briefcases were found, one Nar-

day, could have appeared at the police station and demanded the car and its contents, *id.,* thus making the circumstances "exigent." Here there was no such exigency. The cartons had been lawfully seized from the van.

Finally the Government argues that the panel misstated the evidence relative to the defendants' admissions as to the contents of the cartons. The agent's testimony at the submission hearing was to the effect that when he confronted Dien with the fact that he had seen the boxes loaded into the van at 262 Fifth Avenue, Dien replied that he did not know where in the building "the marijuana came from" and described "the individual that helped load the marijuana in the van." Later when Gendler was told that the agents planned to return to 262 Fifth Avenue to arrest the person who had helped load the boxes, Gendler suggested that the agent "keep the marijuana and turn him and Dien loose." These admissions are said to have reduced the defendant's expectation of privacy under *United States v. Candella,* 469 F.2d 173, 175 (2d Cir. 1972).

*Candella* is a case where the suspect "pointed to the exact spot where the guns were located and told the officers where they were," and on this basis the guns were held admissible under the "plain view" doctrine. Nothing so definitive is presented in the Government's petition. To be sure, Dien's admissions would probably lead any reasonable person to believe that there was marijuana in the boxes, but they do not, on their face come close to the direct pointing which occurred in *Candella.* There was no reason not to submit the evidence to the judgment of a neutral magistrate.

We adhere to our previous decision.