**Sherry Lea STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65729.**

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 11, 1981.

Ted Cackowski and Charles F. Roberts, Jr., Austin, for appellant.

Ronald Earle, Dist. Atty., and Ralph Graham, Asst. Dist. Atty., Austin, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from the conviction of the offense of possession of cocaine. The punishment is imprisonment for two years. The imposition of sentence was suspended and probation was granted.

The appellant asserts that the cocaine was obtained as a result of an unlawful search made in violation of appellant's constitutional rights.

The appellant was observed in a supermarket placing a steak and a bottle of bath oil in her purse. She left the store without paying for these items. She was apprehended and placed in custody of a City of Austin police officer who had been summoned to the scene by the manager of the store.

The officer took the appellant to the police station to be "booked" for theft. There another officer in the theft division took custody of appellant. This officer noticed that appellant's nose was running. This condition, he knew, commonly results from the use of cocaine. The officer also remembered being told that the appellant, while pleading with the store manager to let her pay for the items which she had placed in her purse, had stated that "she needed to thieve because a dope deal was going down." When the officer asked appellant if she was holding some dope she clutched her purse. The officer took the purse and found a prescription bottle bearing the name of another person. The appellant became emotional and "real loud," but when the officer put the bottle aside she became calm. When the officer who had brought her to the theft division and who was still there completing some forms picked up the bottle appellant went "berserk." The bottle was opened and found to contain a substance which proved to be cocaine.

■ Art. 18.16, V.A.C.C.P., provides, in pertinent part:

"All persons have a right to prevent the consequences of theft by seizing any personal property which has been stolen and bringing it, with the supposed offender, if he can be taken, before a magistrate for examination, or delivering the same to a peace officer for that purpose . . ."

The appellant's arrest was lawful. See *Tawater v. State*, 408 S.W.2d 122 (Tex.Cr.App. 1966). A search incident to that lawful arrest requires no warrant if it is restricted to a search of the person or of objects immediately associated with the person of the arrestee; *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); or a search of objects in an area within the control of the arrestee; *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Further, where the formal arrest follows "quickly on the heels of the challenged search of petitioner's person," it is not particularly important that the search precedes rather than follows the formal arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). See also *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

Contrary to appellant's assertion, the State argues that under *Robinson* the warrantless search of appellant's purse is constitutionally permissible. The State relies upon *United States v. Moreno*, 569 F.2d 1049 (9th Cir. 1978), *United States v. Jeffers*, 524 F.2d 253 (7th Cir. 1975), and *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). See also *Brown v. State*, 594 S.W.2d 86 (Tex.Cr.App.1980). These cases, however, all involved the warrantless search of a purse occurring prior to the applicability of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) to warrantless searches of certain other types of personal property.

In *Chadwick*, the defendants were arrested and a locked, two hundred pound footlocker was searched without a warrant after the police, acting with probable cause, had taken it from the trunk of a parked automobile. And in *Sanders*, an unlocked, portable suitcase was searched without a warrant after the police, acting with probable cause, had taken it from the trunk of a taxicab. The Supreme Court held in both cases that the police officers had engaged in an unconstitutional search of the luggage.

The Supreme Court in *Chadwick* explained that an individual has a legitimate expectation of privacy in the contents of certain containers such as a footlocker which differs from the reduced expectation of privacy associated solely with the search of an arrested person. The distinction was noted as follows:

"Unlike searches of the person, *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, 66 Ohio Ops.2d 202 (1973); *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest. Respondents' privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest."

Regarding the search of the interior of the footlocker as a far greater intrusion into Fourth Amendment values than the mere impoundment of the footlocker, the Court further stated:

"When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless 'search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructable evidence.' *Chimel v. California*, 395 U.S. at 763, 89 S.Ct. 2034, 23 L.Ed.2d 685. See also *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 Ohio Ops.2d 383 (1968).

"Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence... However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' *Preston v. United States*, 376 U.S., at 367, 84 S.Ct. 881, 11 L.Ed.2d 777, or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." [Emphasis added.]

Under a literal reading of *Chadwick*, the scope of its warrant requirements are made applicable only to luggage or other personal property "not immediately associated with the person of the arrestee." Therefore, the issue is whether a purse is "immediately associated with the person of the arrestee." If it is, the warrantless search of the appellant's purse is excepted from the warrant requirement under *Chadwick* and therefore proper under *Robinson*.

Reiterating what the Supreme Court said in *Robinson*:

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a *full search of the person* is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment." [Emphasis added.]

A "full search of the person," however, has recently been held, under the *Chadwick* progeny to exclude briefcases, *United States v. Presler*, 610 F.2d 1206 (4th Cir. 1979), attache cases, *Araj v. State*, 592 S.W.2d 603 (Tex.Cr.App.1979), guitar cases, *United States v. Bella*, 605 F.2d 160 (5th Cir. 1979), cardboard boxes closed and sealed with tape, *United States v. Dien*, 615 F.2d 10 (2nd Cir. 1980), unlocked backpacks, *United States v. Meier*, 602 F.2d 253 (10th Cir. 1979), and duffel bags, *United States v. Johnson*, 588 F.2d 147 (5th Cir. 1979), but has been held to include wallets. See *United States v. Passaro*, 624 F.2d 938 (9th Cir. 1980); *United States v. Ziller*, 623 F.2d 562 (9th Cir. 1980); *United States v. Matthews*, 615 F.2d 1279 (10th Cir. 1980); *United States v. Phillips*, 607 F.2d 808 (8th Cir. 1979); *United States v. Castro*, 596 F.2d 674 (5th Cir. 1979). In *United States v. Passaro, supra*, the Court of Appeals, in concluding that *Chadwick* did not apply to the warrantless search of a wallet, said:

"Just as the police in *Robinson* could, incident to a lawful arrest, search the defendant's person, including the contents of a cigarette package found in the defendant's pocket, so too could the search incident to Passaro's arrest include an inspection of the contents of his wallet to discover evidence of crime ... The search here was valid and reasonable and the evidence seized therefrom was admissible even though it was unrelated to the crime for which Passaro was arrested." [Cases omitted.]

And in *United States v. Ziller, supra*, the Court of Appeals said:

"In our view, a search of the person which produced the wallet being permissible under *Chadwick*, a search of the contents of the wallet is likewise permissible as being an incident to and a part of the personal search."

We are unable to find any federal cases extending *Chadwick* to restrict the warrantless search of a purse incident to that person's arrest. A few federal cases since *Chadwick*, however, have made reference to the warrantless search of purses. For ex-

ample, in *United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979), an appeal based upon the warrantless search of luggage, the Court of Appeals made this reference:

> "... the warrantless search of an arrestee resulting in the seizure of a wallet, purse, or shoulder bag [but prohibiting] an immediate search of the contents of that type of container ... is plainly contrary to the law governing searches incident to arrest."

And in *United States v. Berry*, 560 F.2d 861 (7th Cir. 1977), *vacated on other grounds*, 571 F.2d 2 (7th Cir. 1978), an appeal based upon the warrantless search of an attache case, the Court of Appeals made this distinction:

> "Finally, unlike a purse that might be characterized as 'immediately associated with the person of the arrestee' because it is carried with the person at all times, the attache case here was more like luggage ..."

■ In the instant case, we believe that the search of the purse is better characterized as a search of items immediately associated with the person of the appellant. As a matter of common usage, a purse is an item carried on an individual's person in the sense that a wallet or items found in pockets are and unlike luggage that might be characterized as "a repository for personal items when one wishes to transport them," *Arkansas v. Sanders*, supra, a purse is carried with a person at all times. Although the arrest of appellant, standing alone, did not destroy whatever privacy interests she had in the contents of the purse, it did, at least for a reasonable time and to a reasonable extent, subordinate those interests to the legitimate governmental interest in discovering weapons and preventing the destruction or secretion of evidence.

In conclusion, we find the "reasonable expectation of privacy," *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), justifying the warrant requirement under *Chadwick* and *Sanders* not applicable to the case at bar. Appellant's purse is among those personal effects which, under *Robinson*, may be seized and searched as part of a full search of her person incident to the lawful arrest for theft and the evidence seized as a result thereof was properly admitted at trial.

The judgment is affirmed.

CLINTON, Judge, concurring.

Both constitutions that at once authorize governmental action and prohibit infringement of individual freedom and liberties guarantee the right of a citizen to be "secure" in his "effects"[1] and "possessions"[2] from unreasonable searches and seizures. Axiomatic is the proposition that the guarantees include the requirement that "normally searches of private property be performed pursuant to a search warrant issued in compliance with the Warrant Clause" and, therefore, in the ordinary case "a search of private property must be both reasonable and pursuant to a properly issued search warrant," *Arkansas v. Sanders*, 442 U.S. 753, 758,[3] 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979).

That opinion is chosen for its reiteration of "the general principles applicable to

---

1. The Fourth Amendment to the Constitution of the United States provides in pertinent part:
 "The right of the people to be secure in their persons, houses, papers, and *effects*, against unreasonable searches *and* seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ... and particularly describing ... the persons or things to be seized."
 (All emphasis is mine unless otherwise indicated.)

2. Article I, § 9, of the Bill of Rights in the Constitution of the State of Texas is similar yet interestingly different in some respects:

 "The people shall be secure in their persons, houses, papers and *possessions*, from all unreasonable seizures *or* searches, and no warrant ... to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause..."

3. Accordingly, the Supreme Court added, "The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant..."

claims of Fourth Amendment violations," *id.* at 757, 99 S.Ct. at 2589, because the purpose stated by Justice Powell for granting writ of certiorari was "to resolve some apparent misunderstanding as to the application of our decision in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) to warrantless searches of luggage seized from automobiles," *id.*, at 754, 99 S.Ct. 2588. *United States v. Chadwick* is, of course, the case from the opinion of which, written by The Chief Justice, the majority here draws much of the underlying rationale for its result in this cause. In *Chadwick* the reason for taking the case "was to decide whether a search warrant is required before ... [law enforcement] agents may open a locked footlocker which they have *lawfully seized at the time of the arrest of its owners*, when there is probable cause to believe the footlocker contains contraband," 433 U.S. at 3, 97 S.Ct. at 2479. Thus, the purpose in writing *Sanders* and the reason for taking *Chadwick*—the questions respectively resolved in each—are not

presented in the case at bar, which is to say that neither decision controls the conclusion in our case.[4]

Accordingly, to uphold what happened here requires reliance on some other authoritative theory. In this connection, not at all clear is the factual basis for the legal analysis made by the majority. Its account of statements and movements by appellant and police officers in the theft division office seems to be leading into a demonstration of probable cause to seize and search the purse of appellant and its contents, but then its exposition turns to an exception to the warrant requirement, namely, a search incident to a lawful arrest—though it was "remote in time or place from the arrest," *Preston v. United States*, 376 U.S. 364 at 367, 84 S.Ct. 881 at 883, 11 L.Ed.2d 777 (1964).

It is that remoteness in time and place that the majority does not come to grips with. Rather, its analysis starts with the

4. The question presented by grant of certiorari in *Chadwick* was limited to substantially what was stated by The Chief Justice as the reason for taking the case, quoted above; see *Chadwick*, 433 U.S. at 7, n.3, 97 S.Ct. at 2481 n.3. The answer to the question was given at the conclusion of part (3) of the opinion: "There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides," *id.* at 11, 97 S.Ct. at 2483. The remainder of the opinion, part (4), addressed and rejected a Government contention that the rationale of the "automobile exception" was applicable to luggage because of its analogous mobility and, in addition, the Government argument that the search was reasonable "because the footlocker was seized contemporaneously with respondents' arrests and was searched as soon thereafter as was practicable." It was while discussing the latter argument that the "explanation" excerpted by the majority opinion herein was made. Essentially, then, that part of the opinion of the Supreme Court is simply a rebuttal, invoking principles established in prior cases, and as such is more dicta innocuously stated than a reasoned holding of Fourth Amendment law. Indeed, though the opinion took no explicit note of the dissenting opinion of Justice Blackmun who, quoting from *United States v. Robinson* much like the majority here, "would hold that a warrant is not required to seize and search any movable property in the possession of a person properly arrested in a public place," 433 U.S. at 18–19, 97 S.Ct. at

2487, manifestly the Supreme Court did not agree, nor so hold.

So also the holding in *Sanders* to dispel apparent misunderstanding of *Chadwick* is stated at 442 U.S. 766, 99 S.Ct. at 2594:

"In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree as it applies to such luggage in other locations. Thus, insofar as the police are entitled to search luggage without a warrant, their actions must be justified under some exception to the warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected."

Along the way, in note 11, at 442 U.S. 764, 99 S.Ct. 2476, 53 L.Ed.2d 538, to delineate just what it was about, the Supreme Court pointed out:

"Nor do we consider the constitutionality of searches of luggage incident to the arrest of its possessor. See, e.g., *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)."

uncontroverted propositions that the arrest of appellant at the scene was lawful and that a warrantless search incident to an initial arrest is likewise lawful, but it then applies constitutional principles it reads into certain opinions of the Supreme Court— principles that in my judgment are not there—to the situs of the theft division room in the station house, as if the players are still at the scene of the offense. My own examination of the overall situation and reading of the authorities reject that analysis.

Appellant was apprehended and arrested upon probable cause to believe she had committed theft of a steak and a bottle of bath oil.[5] Early on, however, it was held that the predecessor to Article 18.16, V.A.C.C.P. (Article 325, C.C.P., 1925), as a "general" statute, did not control the more specific ones regulating searches and only permitted a search "contemporaneously with a legal arrest," *Davis v. State*, 113 Tex.Cr.R. 421, 21 S.W.2d 509, 511 (1929); see also *Stevens v. State*, 159 Tex.Cr.R. 247, 262 S.W.2d 716 (1953);[6] cf. *Adams v. State*, 137 Tex.Cr.R. 43, 128 S.W.2d 41, 44 (1939). Thus, the search of her purse made at the scene of the

arrest—fruits of which were not introduced in this case—is not contested. That search of her purse and retrieval of the stolen items not only terminated probable cause for any further search of the purse but it also coincidentally satisfied the twin rationales for any search of it incident to her arrest.[7] Accordingly, at the time she was removed from the scene the arresting officer had used up his entitlement to search appellant and her effects or possessions. Compare *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975).

The search of her purse at the station house, not being contemporaneous with it, was "simply not incident to the arrest" back at the scene. *Preston v. United States*, supra, 364 U.S. at 367, 84 S.Ct. at 883; *Cardwell v. Lewis*, 417 U.S. 583, 591, n. 7, 94 S.Ct. 2464, 2470 n. 7, 41 L.Ed.2d 325 (1974), and the majority err in extending the search incident doctrine from one part of town to another, and then in struggling to determine whether a purse, abstractly, is to be pigeonholed with luggage, under *Chadwick* and *Sanders*, or with "items immediately associated with the person" of the accused.[8]

---

**5.** It is assumed but not decided that this statutory grant of *authority* to prevent the consequences of theft does not condition its exercise upon the degree of the offense with respect to punishment. See *Lewis v. State*, 598 S.W.2d 280, 284 (Tex.Cr.App.1980).

**6.** The interesting contention by the dissenting member that old Article 325, supra, authorized issuance of a search warrant to seize stolen property failed to carry the day.

**7.** Therefore, not raised here is the question of an on-the-scene search of the purse solely incident to arrest of appellant, and we need not decide it. The majority implies at page 2 of its opinion that a warrantless "search incident" of the purse was permissible in that it was an "object . . . immediately associated with the person" of appellant, citing only *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). But that problem was neither presented nor resolved in *Robinson* for the only search done there was "a full search of the person" of *Robinson*, a purseless male, as language in the opinion makes as plain, i.e., 414 U.S. at 221–222, n. 2; 224; 225; 229, 94 S.Ct. at 470–471, n. 2; 471; 472; 474, as its actual holding at 235 that "in the case of a lawful custodial arrest a full search of the person is

not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), decided the same day, reiterates that quoted holding of *Robinson* and goes on to conclude, "We hold, therefore, that upon arresting petitioner for the offense . . . and taking him into custody, Smith was entitled to make a full search of petitioner's person incident to that lawful arrest." *Gustafson* was a male, without a purse.

Furthermore, in each case the search of the person of each arrestee was conducted contemporaneously with and at the scene of the arrest—not a place and time remote from it. Here, after he took custody of appellant in the office of the store manager, the arresting officer did not indicate any interest whatsoever in her purse. Against her pleas for private settlement of the matter he transported her to the station house, explaining that "standard procedure" dictated he must take her in.

**8.** In this connection, the majority selectively quotes from *Arkansas v. Sanders* to characterize luggage, unlike a purse, as "repository for personal items when one wishes to transport them." However, I believe, with Judge Van

Although she may have had an option, appellant took the purse with her to the station house where surely she would be booked and confined pending release on bail or other proceedings.[9] A justifiable intrusion upon her right generally to liberty and freedom of movement had been perfected and her expectation of privacy in the contents of her purse had already been invaded once. Whatever vestiges of privacy remained would soon be lost through routine property inventory preceding confinement. In this thoroughly different context of a state of detention, the officers were entitled to do some of that which was shortly to be effectuated. *United States v. Edwards*, 415 U.S. 800, 804–805, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974):

> "... With or without probable cause, the authorities were entitled at that point not only to search Edward's clothing but also to take it from him and keep it in official custody.... [T]his was the standard practice in this city. * * * The police did no more ... than they were entitled to incident to the usual custodial arrest and incarceration."

See *Pulido v. State*, 503 S.W.2d 578, 581 (Tex.Cr.App.1974); *Haley v. State*, 480 S.W.2d 644, 645 (Tex.Cr.App.1972); see also *Korn v. State*, 402 S.W.2d 730 (Tex.Cr.App. 1966); *Johnson v. State*, 597 S.W.2d 441 (Tex.Cr.App.1965). Though these cases involved a prebooking inspection, followed by search and seizure, of items of personal apparel being worn by the detainee, the principles that permit those actions also apply to any corporeal property on or about the person, such as a purse, not because it is "immediately associated with the person of the arrestee," but since it is to accompany the detainee into confinement or be inventoried and held as personal property during confinement. Such is the direct holding in an almost identical fact situation by the courts in *Bullwinkle v. California*, 105 Cal. App.3d 82, 164 Cal.Rptr. 163, 166–167 (Calif. Ct.App.1980), the appeal from which was recently dismissed by the Supreme Court of the United States for want of a substantial federal question, 28 CrL 4131—that being, of course, a disposition of the case on its merits.[10]

So, instead of deciding, presumably for all times, that a purse is "immediately associated with the person of the arrestee"— something the Supreme Court has not yet determined—I would uphold what happened here on the *Bullwinkle* doctrine that the Supreme Court has approved. Thus, not at all for the reasons espoused by the majority, I concur in the judgment of the Court.[11]

---

Graafeiland and the Second Circuit in *U. S. v. Markland*, 635 F.2d 174, 28 CrL 2337 (CA2, 1980), that a given container may or may not be like "a suitcase, briefcase, *purse*, or similar repository of personal effects 'inevitably associated with the reasonable expectation of privacy,' see *Arkansas v. Sanders*, 442 U.S. at 762, 99 S.Ct. at 2592." The phrase is taken from *Chadwick*, 433 U.S. at 13, 97 S.Ct. at 2484: "... [L]uggage is intended as a repository of personal effects," with respect to which expectations of privacy normally inhere. The critical point is that the principal privacy interest attaches to the contents more than to their repository, as is made clear by *Chadwick*, supra, in note 8, at 13–14, 97 S.Ct. at 2484, 2485.

**9.** A male, said to be her boyfriend, had intervened on her behalf in the manager's office; once it was made clear that appellant was to be taken in there is nothing in the record to suggest she could not have turned her purse over to the boyfriend.

**10.** *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1977).

**11.** The instant offense occurred November 8, 1979—well after the Controlled Substances Act had been effectively amended to designate "cocaine" as one. See *Crowl v. State*, 611 S.W.2d 59 (Tex.Cr.App.1980).