**Lance Darnell LALANDE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–82–00141–CR.**

Court of Appeals of Texas, El Paso.

May 11, 1983.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for capital murder. The jury's response to punishment special issues resulted in imposition of a life sentence. We affirm.

■ Ground of Error No. Four contends that the court erred in admitting the testimony of Appellant's fellow county jail inmate, Lucius Witherspoon. Witherspoon testified that Appellant had confessed committing the alleged offense to him, describing details of its commission. There is no evidence that Witherspoon was acting as an agent of law enforcement personnel at the time he received this confession. Consequently, the confession was not the product of custodial interrogation and was not subject to Article 38.22 of the Code of Criminal Procedure. It was admissible in evidence as part of the State's case-in-chief. *Chambliss v. State,* 647 S.W.2d 257 (Tex.Cr.App.1983). Ground of Error No. Four is overruled.

Grounds of Error One, Two and Three challenge various items of evidence produced by an allegedly invalid arrest of the Appellant and invalid search of his belongings by police officers in San Francisco, California. On the night of November 23, 1981, Appellant and a companion, Robert Thomas, were walking down a street near the wharf area in San Francisco. They

were observed by Officers Hutzler and Rogers who were assigned to an anti-burglary of vehicle plain clothes detail. The location, time of night, crime rate in the area, and behavior of the two subjects with regard to parked cars led the officers to make an investigatory stop under the doctrine established in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The stop is not challenged in this case. The officers separated the two subjects and removed an airline shoulder bag which Thomas had been carrying, placing it in the bed of their undercover pick-up truck. Both individuals were subjected to outer pat-down inspections, also not challenged by Appellant. This inspection produced no incriminating evidence with respect to Thomas. In Appellant's pants pocket, one officer felt a knife, which was then removed and found to have a blade length of four and one-fourth inches. Appellant was placed under arrest for violation of San Francisco Municipal Code Section 1291(b), carrying a prohibited weapon. In preparation of releasing Thomas, one officer asked if the shoulder bag were his. Appellant spontaneously interjected from his location that the bag was his, not Thomas's. No challenge is raised to the introduction of that declaration. The officers then performed a cursory examination of the bag, referring to this as a custodial search or search incident to arrest. Other testimony concerning the danger of explosives or the participants' location in a radio dead-spot is actually not pertinent to the search question. During the initial search of the bag, the officers found a 9 mm. pistol wrapped in clear plastic. Both individuals were then placed under arrest and transported to the police station for booking. An NCIC check revealed an El Paso capital murder warrant for Appellant and a stolen weapon entry on the pistol. Other evidence demonstrated that the pistol was taken during the robbery-murder which is the subject of this capital murder prosecution.

■ There are two critical issues in assessing the propriety of admitting the challenged evidence: did the State establish probable cause for the arrest and was the search of the airline bag within the proper scope of a search incident to arrest? With regard to the first question, we agree that the State has failed to establish probable cause for the arrest. Both officers testified that the arrest was for a violation of the San Francisco Municipal Code. Hutzler testified that section 1291(b) proscribed carrying a "concealed weapon," including knives with a blade-length over two and one-half inches. Rogers testified that the same provision forbade possession of a "prohibited" weapon, such as knives with blades over three and one-half inches in length. Appellant's knife would clearly qualify under either definition. Of significance is the fact that the municipal ordinance upon which the arrest was grounded was never properly introduced into evidence. District and appellate courts of this State may not take judicial notice of Texas municipal ordinances, much less those of cities in other states. In a parallel situation, the Court of Criminal Appeals, in *Green v. State,* 594 S.W.2d 72, 73–74 (Tex.Cr.App.1980), reversed a conviction founded upon evidence resulting from an arrest for violation of the Waco Municipal Innkeepers Ordinance, where the ordinance in question was not properly introduced into evidence. The only evidence offered as to the ordinance was identical to that presented by the San Francisco officers in this case.

■ Had the arrest been proper and properly proven, the question would then turn to whether or not the search of the airline shoulder bag was within the legitimate scope of a search incident to arrest. We point out that the issue is addressed by Appellant solely in terms of United States constitutional doctrine. No reliance was or is placed upon Texas search doctrine. With that in mind, we find little difficulty in concluding that, given proof of a valid arrest, the search of the shoulder bag was not prohibited by any reasonable expectation of privacy embodied in the Fourth Amendment.

*United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), acknowl-

edged that neither probable cause nor a warrant are required if at a time and location incident to arrest, a search is conducted of the person of the arrestee and of objects immediately associated with his person. The critical question is whether the airline bag was an object immediately associated with the person of the Appellant. An examination of relevant annotations produces a list of judicially scrutinized containers which would satisfy the inventory needs of any major luggage retailer. Brief cases, attache cases, guitar cases, cardboard boxes, backpacks, footlockers and duffel bags have been found to be outside the immediate zone. *Chadwick,* supra; *United States v. Dien,* 615 F.2d 10 (2d Cir.1980); *United States v. Presler,* 610 F.2d 1206 (4th Cir. 1979); *United States v. Bella,* 605 F.2d 160 (5th Cir.1979); *United States v. Meier,* 602 F.2d 253 (10th Cir.1979); *United States v. Johnson,* 588 F.2d 147 (5th Cir.1979); *Araj v. State,* 592 S.W.2d 603 (Tex.Cr.App.1979). On the other hand, wallets, purses, shoulder bags, brief cases, bank bags, backpacks and trash bags have been found to be sufficiently connected to the person to be subjected to such intrusion. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Garcia,* 605 F.2d 349 (7th Cir.1979); *Jones v. State,* 640 S.W.2d 918 (Tex.Crim.App.1982); *Snyder v. State,* 629 S.W.2d 930 (Tex.Cr.App.1982); *Stewart v. State,* 611 S.W.2d 434 (Tex.Cr. App.1981); *Sims v. State,* 643 S.W.2d 465 (Tex.App.—Austin 1982); *Farb v. State,* 634 S.W.2d 14 (Tex.App.—Beaumont 1982). To adopt a pigeon hole approach and merely follow one of the above would be to fall into the analytical error sought to be eliminated in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). That opinion established that areas to be protected by the Fourth Amendment are not to be defined by fixed geographical concepts. Rather, it is the individual's real expectation of privacy, socially endorsed as a reasonable expectation, which dictates the zone of privacy from warrantless intrusion. As indicated by Judge Clinton's concurring opinion in *Stewart v. State* at 438–441, this necessitates an examination of each con-

tainer case on its own terms, beginning with the basic Fourth Amendment concept expressed in *Katz.* The facts are then filtered through the requisites of proper police conduct to establish the predicate for a search incident to arrest—probable cause for arrest, effectuation of arrest, and search of the person and immediately associated objects at a place and time not remote from the site of the actual arrest. *Stewart* at 439. As the search moves away from the body and wearing apparel of the subject to containers in his custody or environ, greater scrutiny must be applied to the issue of where the individual's reasonable expectation of privacy is focused—in the container itself, as a repository of goods, or in the contents of such repository. A given container may be immediately associated with the person in one context and yet the same type of container be considered remote "luggage" in another. *Stewart,* fn. 8 at 440–441. The fixed description of the container, while a factor to be considered, is not solely determinative of its being subjected to this type of search. The nature of the object, its customary use as recognized by society's expectations, its customary use by the subject, its actual use at the time of arrest, and society's reasonable view of such actual use are all part of the Fourth Amendment equation. Some objects will virtually always be either susceptible or not susceptible to search incident to arrest. In-pocket wallets are a clear example. Purses, attache cases and suitcases define a group of objects in which contextual interpretation is more flexible. See e.g. *United States v. Berry,* 560 F.2d 861 (7th Cir.1977), vacated on other grounds, 571 F.2d 2 (7th Cir.1978).

An airline flight bag presents an immediate association with the special, temporary transit repository for an individual's property which is not sufficiently intimate to the person arrested to pass muster under Chadwick. Appellant focuses on this basic image of the bag, repeatedly urging the magic word "luggage." This does not, however, accurately depict the use of the bag at the time of the arrest. Appellant and his com-

panion were hardly in the posture of airline passengers at the time. Nor were they engaged in any form of distance travel justifying a Chadwick characterization of the bag. In size and configuration, it was comparable to a shoulder bag or purse. Juries and judges are not required to ignore society's changing concepts of fashion and utility. If two individuals are using the same size and shape object for the same purpose, it defies logic and justice to say that one was subject to search because it bears a designer label while the other is not because it displays a commercial airline logo. Airline shoulder bags, utilized as purses for either males or females, may contain the same intimate articles immediately associated with the person as a traditional purse or fashion shoulder bag. *Stewart* at 438. As such, it is equally susceptible to search incident to arrest. The facts of this case present a sufficient, if not exclusive, basis for such an evaluation by the judge. We conclude that had the State proven a valid arrest, the search of the bag would present no Fourth Amendment evidentiary difficulties.

Judge Clinton's concurring opinion is additionally instructive in its reference to the potential for avoiding legitimate intrusion by the requested transfer of the container to a non-police caretaker. In *Stewart,* the defendant declined to take advantage of her boyfriend's presence to transfer the purse to his care and avoid search. Here, the officers would necessarily have to release Appellant's companion, Thomas, the original carrier of the bag. When Officer Hutzler asked Thomas about the bag, Appellant eliminated the option suggested by Judge Clinton. In *Stewart,* the defendant was destined for custody, booking, and booking inventory search. Judge Clinton concurred with the result in *Stewart* on the basis that the booking inventory would have disclosed the contraband anyway. It would be ridiculous to invalidate an earlier intrusion leading to the same discovery. He found that the majority's search-incident-to-arrest analysis was not essential to validate the discovery of the contraband and its introduction into evidence. Id. at 441. The same reasoning applies here.

We are left with a decision as to the appropriate appellate response to the State's defective presentation of the municipal ordinance establishing probable cause for the arrest. Again emphasizing that reliance has been placed solely on United States constitutional grounds, we conclude that this is not an appropriate case for application of the exclusionary rule. As stated in *Brulay v. United States,* 383 F.2d 345, 348 (9th Cir.), cert. denied, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967):

> ... the exclusionary rule ... is a court-created prophylaxis designed to deter federal officers from violating the Fourth Amendment. Neither the Fourth nor the Fourteenth Amendments are directed at Mexican officials and no prophylactic purpose is served by applying an exclusionary rule here since what we do will not alter the search policies of the sovereign Nation of Mexico.

In *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), the Supreme Court declined to apply the exclusionary rule where an officer effectuated an arrest and search under a law later declared to be unconstitutional. The law was not so grossly violative of the Constitution that its invalidity would have been readily perceptible to the officer acting upon it. We are mindful of a growing dissatisfaction with the benefit-detriment balance afforded through the exclusionary rule. Its blanket application is gradually eroding in a manner which affords appropriate protection for both the criminal offender and the general public. We realize that the present case is distinguishable from the three cited cases in that here the ordinance relied upon for probable cause to arrest was not introduced into evidence, while in the other three cases, the officers were acting within the bounds of the law in effect within their jurisdiction at the time of arrest and search. The erosion of the exclusionary rule which we believe to be in progress appears to be following two paths—one where the good faith of the

arresting officer does not call for the deterrent effect of the exclusionary rule and a second where, regardless of good faith, the deterrent effect will not reach the offending authority. Even if the error were more than a mechanical deficiency in proof and even if the possession of a four and one-fourth inch bladed knife is not prohibited by any municipal ordinance in San Francisco or statewide California penal statute, rendering the arrest actually invalid, application of the exclusionary rule would serve no beneficial effect. It will not serve to dissuade improper police conduct in California. We are not confronted with misconduct on the part of the Texas law enforcement personnel who are at least theoretically susceptible to legal instruction by the Appellate Courts of this State. To apply the exclusionary rule to this evidence and reverse the conviction would serve only to free the offender, a result which has always been an undesirable by-product of the application of the exclusionary rule but which has never been its purpose. Grounds of Error One, Two and Three are overruled.

The judgment is affirmed.