

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

### NO. PD-0722-19

**BRADEN DANIEL PRICE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

**KELLER, P.J., filed a dissenting opinion.**

The court of appeals, the Court's opinion, and one of the dissenting opinions have misunderstood the nature of our holding in *Lalande v. State*,[1] though in different ways. The holding in *Lalande* had nothing to do with the inevitable-discovery doctrine or the search-incident-to-arrest doctrine. Rather, *Lalande* was based on the inventory-search doctrine and on the proposition that the Fourth Amendment permitted the police to do on the scene what they were authorized to do at the station. Accordingly, the search of Appellant's suitcase might have been valid as a legal

---

[1] 676 S.W.2d 115 (Tex. Crim. App. 1984).

accelerated inventory search.

In *Lalande*, the defendant complained that the search of his bag could not be a valid search incident to arrest because his *companion* was carrying the bag.[2] We concluded that Judge Clinton, in a concurring opinion in *Stewart v. State*,[3] anticipated the problem of determining what is "immediately associated" with an arrestee, and we adopted his solution.[4] This solution was a workaround, relying on an entirely different Fourth Amendment doctrine involving "searches of items accompanying the detainee into confinement."[5] In his concurrence, Judge Clinton unequivocally rejected any application of the search-incident-to-arrest doctrine to the search at issue because it was too remote in time and place from the arrest.[6] Rather, he made clear that his proposed rationale for upholding the search derived from the inventory-search doctrine: "Whatever vestiges of privacy remained would soon be lost through routine property inventory preceding confinement. In this thoroughly different context of a state of detention, the officers were entitled to do some of that which was shortly to be effectuated."[7] Judge Clinton further elaborated that the search of the defendant's purse was authorized "not because it is 'immediately associated with the person of the arrestee,' but since it is to accompany the detainee into confinement or be inventoried

---

[2] *Id.* at 118.

[3] 611 S.W.2d 434 (Tex. Crim. App. 1981).

[4] *Lalande*, 676 S.W.2d at 118 (also citing citing *People v. Bullwinkle*, 105 Cal. App. 3d 82, 164 Cal. Rptr. 163 (1980)).

[5] *Id.*

[6] *Stewart*, 611 S.W.2d at 439-40 (Clinton, J., concurring).

[7] *Id.* at 441.

and held as personal property during confinement."[8]  The California *Bullwinkle* case, cited by both *Lalande* and Judge Clinton's concurrence in *Stewart*,[9] held that searches of effects of a prisoner booked into jail were permissible to prevent illicit materials from being introduced to the jail and to safeguard the prisoner's property.[10]  The California court further held that the same type of search prior to booking was permissible ("not render[ed] . . . illegal") because "no additional or greater intrusion on the privacy of the suspect is involved."[11]

So, *Lalande*, Judge Clinton's concurrence in *Stewart*, and the California *Bullwinkle* case based their rationale on the inventory-search doctrine and held that law enforcement did not have to wait for an item to arrive at the usual inventory place if the item was destined to arrive there.  In essence, because an inventory search at the station was inevitable, officers were permitted to conduct the same search at an earlier time.  This was not, however, an application of the inevitable-discovery doctrine, where the search is illegal but the fruits are admissible because they would have inevitably been discovered.[12]  Instead, the search at issue was held to be *legal* because "once it becomes unequivocally clear that the item is to accompany the detainee, the right of inspection accrues

---

[8]  *Id.* (citing *Bullwinkle*, *see supra* at n.4).

[9]  *See supra* at nn. 4, 8.

[10]  *Bullwinkle*, 105 Cal. App. 3d at 87, 164 Cal. Rptr. at 166.

[11]  *Id.*

[12]  *See Nix v. Williams*, 467 U.S. 431, 444 (1984) ("It is clear that the cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity.'  Of course, this does not end the inquiry.  If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received.") (citation omitted).

immediately, and is not limited to inspections carried out within the station itself."[13]

There is still the question of whether the requirements of the inventory-search doctrine would have been met if a search had been conducted at the station. In order for police to validly search a closed container during an inventory search, the arresting agency must have a policy or established routine authorizing such a search.[14] The court of appeals's statement that "the fact that the suitcases would have been inventoried when they accompanied Price to jail did not authorize their search at the airport office"[15] seems to assume that a valid inventory search would have been conducted, but the court of appeals does not appear to have actually addressed the issue. I would remand the case to the court of appeals to do so.

I respectfully dissent.

Filed: September 23, 2020
Publish

---

[13] *Lalande*, 676 S.W.2d at 118.

[14] *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) ("In the present case, the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search. We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida.").

[15] *Price v. State*, No. 04-18-00628-CR, 2019 Tex. App. LEXIS 3697, *7 (Tex. App.—San Antonio May 8, 2019) (not designated for publication).